UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                            Case No. 15-20436
        v.                              Hon. Terrence G. Berg

JAQUAN LEE DAVIS,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
AND FOR AN EVIDENTIARY HEARING (DKT. 31)**

Defendant Jaquan Lee Davis has filed a motion to suppress and for a *Franks* hearing into the validity of the affidavits that the government relied upon in obtaining various search warrants. The Court held a hearing on the motion on March 3, 2016. For the reasons explained below, Defendant's motion (Dkt. 31) is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

A grand jury returned charges against Defendant Davis for two counts: (1) transportation of a minor for prostitution under 18 U.S.C. § 2423(a); and (2) conspiracy to transport a minor for prostitution under 18 U.S.C. § 2423(a) and (e). (Dkt. 27). According the record before the Court, at some point in February 2015, M-1, a minor from Burton, Michigan, ran away from home. (Dkt. 31, p. 1). On March 16, 2015, the FBI opened a missing juvenile case. (Dkt. 34, pp. 1-2).

On April 15, 2015, local law enforcement located M-1 in Gainesville, Georgia. (Dkt. 31, p. 3). After being taken to the Hall County Sheriff's Office in Gainesville, M-1 attempted to run away, and suffered minor cuts to her hands while trying to climb a razor wire fence. (Apr. 15, 2015 GBI Police Report, Dkt. 40, Ex. 1, p. 2). Later that same day, Georgia Bureau of Investigation ("GBI") Special Agent Brook Lindsey interviewed M-1. (Dkt. 34, p. 2). M-1 told Agent Lindsey that she took a bus from Michigan to Georgia and that her mother had purchased her bus ticket. (*Id.*) She also claimed that her mother planned to move to Georgia soon. (Apr. 15, 2015 GBI Police Report, Dkt. 40, Ex. 1, p. 2). When asked about an online listing on a prostitution website that featured her pictures, M-1 denied engaging in prostitution and claimed that a "few mean girls from Michigan" had made the advertisement. (*Id.*)

M-1 remained in custody pending her extradition to Michigan on an outstanding warrant. (Dkt. 34, p. 3). On April 17, 2015, Agent Lindsey again interviewed M-1. (*Id.*) In this interview, M-1 told Agent Lindsey that she traveled to Georgia by bus and that a woman named Nadia Monique McDonald, who went by "Mo," had purchased her bus ticket. (*Id.*) M-1 stated that she met Mo at an event in Michigan. (*Id.*) Upon arriving in Georgia, M-1 claims that she was taken to a house located at 5285 Derby Court, NW, Lilburn, Georgia (the "Compound") where she met Defendant, who went by the name "Q." (Apr. 17, 2015 GBI Police Report, Dkt. 40, Ex. 1, p. 1). Defendant then allegedly told M-1 that she could not stay at the house for free and that she would be prostituted. (*Id.* at pp. 1-2).

2

The GBI's investigators obtained M-1's consent to search her phone. (Dkt. 34, p. 3). The search revealed numerous text messages between M-1's number and a number traceable to Mo. (*Id.* at p. 4). Investigators also discovered phone calls and text messages between M-1's number and the number (678) 787-6036, a number later traced to Defendant. (*Id.* at pp. 4-6).

On May 12, 2015, FBI Special Agent Todd Reineck applied for and obtained four warrants in the Eastern District of Michigan to search cell phones, as well as Twitter and Gmail accounts, linked to Defendant and Mo. (*Id.* at p. 6). In the affidavit supporting the warrants, Agent Reineck included the version of events that M-1 described in her April 17, 2015 interrogation, including that M-1 traveled to Georgia by bus and that Mo purchased her bus ticket. (Dkt. 40, Ex. A, ¶ 21). The affidavit made no mention of M-1's April 15, 2015 statement that her mother purchased her ticket and that she initially denied having engaged in prostitution. (*Id.*) The affidavit also contains text messages between M-1 and Defendant where M-1 appeared to be informing Defendant of her arrival at different locations and discussing prostitution. (*Id.* at ¶ 27).

On May 19, 2015, Agent Reineck interviewed M-1 after she returned to Michigan. (Dkt. 34, Ex. 1, p. 1). At this interview, M-1 told Reineck that on February 9, 2015, Mo picked M-1 up from her house in Flint in a black Ford Fusion, gave her marijuana laced with other substances, and drove her to Detroit. (*Id.* at p. 2). She also said that she met Defendant in Detroit, and tried to run away but that Defendant stopped her. (*Id.*) She then claimed that she was driven from Michigan

to the Compound against her will. (*Id.*) While there, M-1 stated that she was kept in a basement. (Dkt. 34, p. 8).

On May 21, 2015, the government filed a criminal complaint against Defendant along with a supporting affidavit from Agent Reineck. (Dkt. 1). Reineck's affidavit included the version of events that M-1 described in her May 19, 2015 interview. (Dkt. 1, p. 6). It also stated that once in Georgia, M-1 was kept in a locked basement that had a reversed door handle so that she could not escape. (*Id.*) The affidavit also included the text messages between M-1 and Defendant that appeared to be discussing prostitution.

On June 8, 2015, FBI Special Agent Taylor Dervish applied for and obtained three additional search warrants for cell phones belonging to Defendant and Mo, and for a search of the Compound. (Dkt. 34, p. 10). Agent Dervish's affidavit in support of the search warrants contained the same version of how M-1 arrived in Georgia as the criminal complaint did. (*Id.*) Both the May 21, 2015 affidavit for the criminal complaint and the June 8, 2015 affidavits for the search warrants for the cell phones and the Compound relied upon Special Agent Reineck's most recent interview of M-1—the May 19, 2015 interview.

On June 11, 2015, the FBI executed its search warrant for 5285 Derby Court, NW, Lilburn, Georgia, ("the Compound") and arrested Defendant at that location pursuant to an arrest warrant. (*Id.* at p. 11; Dkt. 31, p. 6). After Defendant was arrested and was advised of his *Miranda* rights, he gave a statement to law enforcement. (Dkt. 31, p. 6). On July 15, 2015, Defendant was indicted on one

4

count of transportation of a minor for prostitution under 18 U.S.C. § 2423(a) (Dkt. 16) and appeared for a detention hearing before Magistrate Judge Hluchaniuk (Dkt. 34, p. 11). At the hearing, the government acknowledged that M-1 had made previous inconsistent statements and that it now believed that M-1 was transported to Michigan via bus, not by car. (Dkt. 22, 6:15-7:6). It also informed the court that contrary to M-1's representation, the Compound did not have a basement. (*Id.* at 7:7-15).

On December 2, 2015, the grand jury issued a second superseding indictment containing the two current counts. (Dkt. 27). On January 11, 2016, Defendant filed this instant motion to suppress and for an evidentiary hearing. (Dkt. 31). The Court held a hearing on March 3, 2016 and requested supplemental briefing.

## II. ANALYSIS

### A. Discussion

A defendant is entitled to a *Franks* hearing under the Fourth Amendment "where the defendant makes a substantial preliminary showing that [1] a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] if the allegedly false statement is necessary to the finding of probable cause[.]" *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Here, Defendant seeks a *Franks* hearing to challenge the search warrants issued on May 12, 2015 and on June 8, 2015. Defendant claims

that the warrants lacked probable cause because the government allegedly intentionally included certain false information in the supporting affidavits, while simultaneously omitting other material facts.

The Sixth Circuit has repeatedly stressed that "there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *U.S. v. Fowler* 535 F.3d 408, 415 (6th Cir. 2008) (collecting cases). A defendant is entitled to a *Franks* hearing concerning omissions "if and only if: (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." *Id.*

As Defendant makes different claims in regards to each affidavit, the Court will address each in turn.

### 1. May 12, 2015 Affidavit

Beginning with the first *Franks* factor, Defendant complains that the May 12, 2015 affidavit—in support of search warrants for cell phones, as well as Twitter and Gmail accounts, linked to Defendant and Mo—contains numerous intentionally

6

false statements or statements that were included with reckless disregard for the truth. Defendant alleges that these statements include: (1) that "Mo" knew that M-1 was 15 years old; (2) that Defendant gave M-1 a fake ID; and (3) that M-1 did not want to prostitute herself and only complied because she feared for her life.

As a threshold matter, the Court notes that "[t]he intentionally or recklessly false statement must be made by the affiant [himself], not the non-governmental informant." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003). Here, allegedly false statements were made by M-1 during her April 17, 2015 interview with GBI Agent Lindsey; the Affiant, FBI Special Agent Reineck, did not make these statements. (*See* Dkt. 40, Ex. 1). And while it is true that Agent Reineck relied on M-1's statements to GBI investigators in compiling his affidavit, there is nothing in the record to suggest that he was recklessly indifferent to the truth of these statements when he included them in his affidavit, or that he had grounds for doubting their veracity. Defendant has therefore failed to meet the first *Franks* prong.

Defendant next tries to meet this prong based on statements he claims the government improperly omitted from the affidavits. Defendant complains that the May 12, 2015 affidavit did not contain M-1's earlier statements from her interview on April 15, 2015 where she told GBI officers that her mother purchased her bus ticket, and denied ever engaging in prostitution.

As explained above, the standard for obtaining a *Franks* hearing is higher when the request is based on omitted statements. *Fowler* 535 F.3d at 415. That

standard, requiring a showing that the Affiant engaged in deliberate falsehood or reckless disregard for the truth by omitting M-1's statements, has not been met. Moreover, Defendant has failed to establish that if these omitted statements had been included, their presence in the affidavit would have undermined the showing of probable cause. The May 12, 2015 affidavit easily meets the threshold of probable cause. Among other things, it states that M-1: (1) was a 15-year-old-girl (Dkt. 40, Ex. A, ¶ 6); (2) had previously engaged in prostitution (*id.* at ¶ 9); (3) traveled from Michigan to Georgia where she met Defendant, a man who had previously been arrested for pimping (*id.* at ¶¶ 20-21); and (4) had a cell phone showing text messages from M-1 to a phone number traced to Defendant in which M-1 made references to being in several different states and appeared to discuss prostitution (*id.* at ¶ 27).

Therefore, even if the Court were to include the statements that Defendant claims were wrongfully omitted—that M-1's mother purchased her bus ticket and that M-1 originally denied having engaged in prostitution—the affidavit would easily clear the bar for showing probable cause that evidence of child prostitution was likely to be found on the cell phones and in the Twitter and Gmail accounts associated with Defendant and Mo. Accordingly, Defendant is not entitled to a *Franks* hearing as to the May 12, 2015 affidavit.

    **2. June 8, 2015 Affidavit**

Defendant also seeks a *Franks* hearing to challenge the June 8, 2015 affidavit prepared by FBI Special Agent Michelle Dervish in support of three search

warrants obtained in Georgia. Agent Dervish based parts of her affidavit on Agent Reineck's affidavit in support of the criminal complaint filed on May 21, 2015 (Dkt. 1). Defendant complains that the affidavit contains both intentional falsehoods and improper omissions.

SA Dervish's affidavit states that Mo picked M-1 up from her home in Flint in her car, drugged her, and took her to Detroit to meet Defendant. (Dkt. 40, Ex. E, ¶ 21). It then states that Defendant and Mo drove M-1 to Georgia against her will and kept her in a locked basement so that she could not escape. (*Id.*) The government concedes that it now believes these statements were not true, that is, that M-1 in fact traveled to Georgia by bus. Furthermore, the government acknowledges that the Compound where M-1 was kept did not have a basement.

While these statements were indeed false, "[i]t is not enough for defendants to show that the affidavit contains false information; in order to obtain a *Franks* hearing, defendants must make a 'substantial preliminary showing' that the false statements originated with the government affiant, not with the informants, or that the government affiant repeated the stories of the affiant with reckless indifference to the truth." *United States v. Giacalone*, 853 F.2d 470, 475-76 (6th Cir. 1988). Here again, these statements were made by M-1 not by Agent Dervish, the government affiant.

Nor is there a substantial showing that Agent Dervish repeated M-1's account with reckless indifference to the truth. M-1 made these statements during an interview with Agent Reineck on May 19, 2015, just after M-1's return to

Michigan from Georgia. (Dkt. 34, Ex. 2). Agent Reineck compiled these statements in a report (*id*) and integrated them in his affidavit in support of the criminal complaint that he filed two days later, on May 21, 2015 (Dkt. 1). It is true that Agent Reineck had evidence of prior inconsistent statements as to how M-1 traveled to Georgia, including M-1's prior statements that she traveled to Georgia via bus. However, Defendant has not made a substantial preliminary showing that Reineck was recklessly indifferent to the truth of M-1's statements simply because he relied on the statements M-1 made during the May 19, 2015 interview rather than the statements that M-1 had previously given to GBI agents. There is nothing in the record that suggests that Agent Dervish was in a position to know, on May 21, 2015, that M-1's earlier statement that she took a bus to Georgia was more accurate than her later statement to Agent Reineck that she was driven there by Mo and the Defendant.

Defendant also claims that Agent Dervish engaged in deliberate falsehood or reckless disregard for the truth by omitting information from the affidavit. The omitted information includes:

- (1) M-1's April 15, 2015 statement that (a) her mother purchased her bus ticket to Georgia, (b) she had not engaged in prostitution, and (c) mean girls from Michigan had created her online listing on a prostitution website;
- (2) text messages between M-1 and Defendant that suggest that M-1 was free to return to Michigan; and

- (3) M-1's April 17, 2015 statement that she went to Georgia by bus ticket purchased by Mo.

There is no doubt that the June 8, 2015 affidavit presents the Defendant in a worse light than the prior affidavits because it states that Defendant and Mo drugged, kidnapped, and transported M-1 to Georgia in a locked vehicle. The question, however, is whether Defendant has made a *substantial* preliminary showing that Agent Dervish *deliberately* omitted the prior versions with the intent to mislead. The Court concludes that Defendant has failed to make this showing. While it is clear that a more complete affidavit should have included M-1's prior inconsistent statements, the mere fact that they were omitted is not sufficient to make a substantial preliminary showing that the facts were deliberately omitted with an intent to mislead. If Agent Dervish credited M-1's more recent statement, rather than her earlier story—as would not have been unreasonable under these facts—that belief would explain the decision to include the later version in the affidavit. No showing has been made that the earlier statements were deliberately omitted with a deliberate intent to mislead. Defendant therefore fails to meet this requirement to warrant a *Franks* hearing.

Furthermore, neither the false statements nor the allegedly improperly omitted statements were necessary to the finding of probable cause. The inclusion of statements in an affidavit later determined to be false does not require a *Franks* hearing unless the false statements were critical to the finding of probable cause. "[I]f, when material that is subject of the alleged falsity or reckless disregard is set

11

to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72. In the case of omitted statements, the inquiry is whether "a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." *Fowler*, 535 F.3d at 415.

Here, the June 8, 2015 affidavit contains sufficient allegations to support a finding of probable cause even if one discounts the false information of M-1's kidnapping and simultaneously includes the omitted information of M-1's prior inconsistent accounts of how she arrived in Georgia, and her initial denial of involvement in prostitution. First, the alleged forced transportation of M-1 to Georgia has no bearing on whether evidence of child prostitution would be found in the cell phone records or at the Compound. The more relevant facts were that: M-1 was a minor (Dkt. 40, Ex. A, ¶¶ 6), she had a history of prostitution (*id.* at ¶ 9), she was kept by Defendant at the Compound while working for him as a prostitute, there were hundreds of incoming and outgoing calls between M-1's number and a phone number traceable to Defendant (*Id.* at ¶ 15), and there were text messages between M-1 and Defendant referencing M-1's location at hotels in various states that appeared to discuss prostitution. (*Id.* at ¶ 27).

Nor would the inclusion of the different versions of how M-1 arrived to Georgia undermine the probable cause determination. While the different accounts raise questions as to M-1's reliability, the underlying acts are corroborated by the text messages, and phone calls between M-1 and Defendant, as well as by M-1's

12

prior history. The same holds true for the friendly text messages that indicate that M-1 was free to leave Georgia. In sum, the allegations in the June 8, 2015 affidavit are sufficient to establish probable cause that evidence of violations of 18 U.S.C. § 1591, knowingly engaging in the sex trafficking of children, would be found at the locations to be searched.

For the foregoing reasons, Defendant's motion to suppress and for a *Franks* hearing is **DENIED** (Dkt. 31).

**SO ORDERED.**

Dated: July 6, 2016　　　　　　　　　　　s/Terrence G. Berg
　　　　　　　　　　　　　　　　　　　　TERRENCE G. BERG
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically submitted on July 6, 2016, using the CM/ECF system, which will send notification to all parties.

　　　　　　　　　　　　　　　　　　　　s/A. Chubb
　　　　　　　　　　　　　　　　　　　　Case Manager